OSNER v BOUGHNER

Docket No. 106942. Submitted June 13, 1989, at Lansing. Decided
September 18, 1989. Leave to appeal applied for.

Sharon Osner, personal representative of the estate of Clarence
Osner, deceased, brought an action in Lapeer Circuit Court
alleging liability pursuant to the motor vehicle owners' civil
liability act against Anthony Boughner, Pamela Timm and
Kenneth Timm in connection with the decedent's death from
injuries suffered in a truck rollover accident. On the date of the
accident, the decedent was employed as a truck driver for R-W
Service System, Inc. The truck he was driving was owned by
Pamela and Kenneth Timm and had been leased to R-W.
However, at the time of the accident it was Anthony Boughner,
then a minor, who was at the wheel of the truck with the
decedent riding as passenger. The Timms filed motions for
summary disposition based on two grounds. First, the Timms
contended that at the time of the accident the decedent was
their employee and that the plaintiff's action was therefore
barred by the exclusive remedy provision of the Workers'
Disability Compensation Act. Second, the Timms contended
that they could not be held liable pursuant to the motor vehicle
owners' liability act as they gave no consent to the truck's
operation by Boughner and that plaintiff should not be given
the benefit of the act's protection since the decedent was not an
innocent third party. The court, Martin E. Clements, J., denied
the Timms' motions. At trial before a jury, the court refused to
allow plaintiff to present the testimony of the state trooper who
conducted an investigation of the accident, including tests, as to
his opinion on the speed of the truck immediately before the
accident and the relationship between the skid marks on the
pavement and the truck. Over plaintiff's objection, the court
instructed the jury to evaluate Bougher's conduct under a

REFERENCES

Am Jur 2d, Appeal and Error §§ 521, 738; Automobiles and High-
way Traffic §§ 414, 643, 645; Evidence § 824; Expert and Opinion
Evidence §§ 55-59, 119, 129-135, 389; Workmen's Compensation
§§ 152 et seq.

Admissibility of evidence as to tire tracks or marks on or near
highway. 23 ALR2d 112.

standard of care expected of a minor, and not of an adult. The jury returned a verdict of no cause of action. A judgment consistent with the verdict was entered. Plaintiff appealed, claiming error regarding the trial court's refusal to allow the state trooper to testify as to his opinion and the court's instruction on standard of care. The Timms cross appealed, claiming error in the denial of their motions for summary disposition.

The Court of Appeals *held:*

1. A minor automobile driver is held to the same standard of conduct as an adult. The trial court erred so as to require reversal in instructing the jury to hold Bougher to a minor's standard of care.

2. The trial court improperly excluded relevant and material evidence in refusing the state trooper's proffered expert opinion on the accident. Questions regarding some of the trooper's calculations go to the weight of his testimony rather than its admissibility. The fact that the instant accident was the first accident to be investigated by the trooper goes to the trooper's credibility and the weight to be afforded his testimony, not to the testimony's admissibility.

3. The Timms were not the decedent's employer. The trial court did not err in ruling that plaintiff's action was not barred by the exclusive remedy provision of the workers' compensation act.

4. Plaintiff sufficiently pled facts in support of a claim against the Timms under the motor vehicle owners' civil liability act so as to withstand the Timms' motion for summary disposition. Plaintiff alleged that the Timms were the owners of the truck and that they were negligent in its operation. Taking these allegations as true, a record could have been developed to establish that the Timms expressly or impliedly consented to Boughner's operation of the truck. Also, there was a genuine issue of fact as to whether the Timms had impliedly consented to Boughner's operation of the truck.

5. The motor vehicle owners' liability act provides that any person may prosecute a civil action against a vehicle owner for any injury occasioned by the negligent operation of the vehicle, if the vehicle was driven with the owner's express or implied consent. The Legislature in adopting the act chose not to limit its applicability to noninnocent third parties only. Thus, plaintiff's action is within the act.

Reversed and remanded for further proceedings.

1. AUTOMOBILES — MINORS — STANDARD OF CARE.

A minor automobile driver is held to the same standard of conduct as an adult.

2. Evidence — Expert Testimony — Test Results — Appeal.

The admissibility of expert testimony and test results on experiments performed by experts is a matter within the discretion of the trial court; the trial court's decision will not be reversed on appeal absent an abuse of such discretion (MRE 702).

3. Evidence — Expert Testimony — Test Results.

It is not necessary that the conditions of a test be exactly identical to the conditions existing at the time of an accident before evidence of an expert's test results may be admitted, but a reasonable or substantial similarity is sufficient if it includes only those circumstances or conditions which might conceivably have some influence in affecting the results in question and if the facts are sufficiently similar to accomplish the purpose of assisting the jury to consider the issue of fact presented in regard to the special point in controversy; the lack of exact identity of test and accident conditions goes to the weight and not the competency of the evidence.

4. Evidence — Appeal.

The exclusion of competent, material and relevant evidence on an essential issue may be error requiring reversal where the party offering the evidence has received an adverse factual determination of the issue and where consideration of the excluded evidence might have resulted in a different finding.

5. Witnesses — Expert Witnesses.

A witness may be qualified as an expert if he has acquired specialized knowledge through experience, training or education (MRE 702).

6. Workers' Compensation — Employment — Economic Reality.

The economic reality test is used in determining whether a business was an employer of an injured worker for purposes of workers' compensation; among the relevant factors which demonstrate an employment relationship are: (1) control of the workers' duties, (2) the payment of wages, (3) the right to hire and fire, and the right to discipline, and (4) the performance of the worker's duties as an integral part of the business toward the accomplishment of a common goal.

7. Automobiles — Owners' Civil Liability — Consent.

"Consent," as that term is used in the motor vehicle owners' civil liability act, must be construed to effectuate the policy of the act, that is, to place the risk of damage or injury upon the person who has ultimate control of the vehicle; when an owner willingly surrenders control of his vehicle to others he "con-

sents" to assumption of the risk attendant upon his surrender of control regardless of admonitions which would purport to delimit his consent; thus, an owner who gives express consent to the vehicle's exclusive use by another may be held liable for damage or injury caused not by the individual to whom consent was expressly given, but by a third individual who used the vehicle with the permission of the second individual (MCL 257.401; MSA 9.2101).

*Sumpter & Perry, P.C.* (by *Thomas E. McDonald*), for plaintiff.

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.* (by *Carl M. Riseman*), for Anthony Boughner.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*), for Pamela and Kenneth Timm.

Before: BEASLEY, P.J., and McDONALD and MURPHY, JJ.

MURPHY, J.

### INTRODUCTION

Plaintiff appeals as of right from a 1988 judgment of no cause of action entered following a jury trial on her suit brought pursuant to the motor vehicle owners' civil liability statute, MCL 257.401; MSA 9.2101. Plaintiff's husband died in a trucking accident in March, 1980, after he permitted seventeen-year-old defendant Anthony Boughner to drive the truck. The long delay between the date of the accident and trial was due to an unrelated issue appealed to this Court. See *Osner v Boughner*, 152 Mich App 744; 394 NW2d 411 (1986), lv den 428 Mich 856 (1987). Although plaintiff raises nine issues, we need only address two of them as

the remainder are without merit. However, since we reverse and remand on those two issues, we also address the issues raised on cross appeal by Pamela and Kenneth Timm, the owners of the truck involved in the accident. We reverse the judgment of no cause of action and remand for a new trial.

### STATEMENT OF THE ISSUES

I. Did the trial court commit error requiring reversal when it instructed the jury that defendant Anthony Boughner's conduct was to be evaluated by a minor's standard of care? We answer yes.

II. Did the trial court err when it refused to allow the investigating officer to give his opinion both as to the speed of the truck at the time of the accident and the relationship between the skid marks and the overturned truck? We answer yes.

III. Did the trial court err in denying defendants Timm's motion for summary disposition based on the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131)? We answer no.

IV. Did the trial court err in denying defendants Timm's motion for summary disposition based upon the motor vehicle owners' civil liability statute? We answer no.

V. Is plaintiff precluded from pursuing her claim under the motor vehicle owners' civil liability statute because her husband was not an innocent third party? We answer no.

### FACTS

This cause of action arose out of a March 15, 1980, accident in which the decedent, Clarence

Osner, was killed. The only vehicle involved in the accident was a tractor-trailer rig owned by defendants Pamela and Kenneth Timm. The Timms leased the truck to R-W Service System, Inc., which hired the driver, Clarence Osner.

On the evening before the accident, Clarence Osner was transporting rolled steel from Gary, Indiana, to Alpena, Michigan. During the trip, at approximately 11:30 P.M., Osner stopped at a tavern in Bronson, Michigan, where he had arranged to meet with another of R-W's drivers, the father of defendant Anthony Boughner, and Anthony Boughner, who was seventeen years old. Anthony's father had asked Osner to give Anthony a ride from Bronson to Hale, Michigan, and Osner agreed. Mr. Boughner and Osner talked and drank, while Anthony played shuffleboard, until the tavern closed at approximately 2:00 A.M. Clarence Osner and Anthony Boughner then left in the truck. Osner had been driving for approximately 1½ hours when he started to get sleepy and began nodding off. Osner then recalled a previous conversation with Anthony's father concerning Anthony's experience driving trucks. Osner asked Anthony if he would drive for a while and Anthony agreed. Osner watched Anthony drive for about five minutes, then went to sleep. Later, Anthony stopped the truck twice to check with Osner to see if he was traveling in the right direction. Both times, Osner said yes and went back to sleep.

Eventually the road on which they were traveling came to an end at M-24 in Lapeer, Michigan. The highway was barricaded with traffic being directed onto an exit ramp from I-69 to M-24. When Boughner entered the exit ramp, he believed he was traveling about thirty-five to forty-five miles per hour. He noticed a flashing red light at the end of the ramp where it intersected with

M-24. Boughner then attempted to brake the truck but it went off beyond the paved shoulder of the exit ramp and rolled over, killing Osner. There were no witnesses to the accident; however, measurements of skid marks at the scene indicated that the truck had skidded on the pavement for about 350 feet, then skidded upside down for another 150 feet before coming to a rest. Suit was eventually filed by plaintiff, the decedent's widow, and following a jury trial in February, 1988, a judgment of no cause of action was entered in defendants' favor. Plaintiff appeals, and defendants Timm cross appeal as of right.

### DISCUSSION

#### ISSUE I

Plaintiff first contends that the trial court erred in instructing the jury that Anthony Boughner's conduct in driving the truck was to be evaluated by a minor's standard of care. Plaintiff argues that, since Boughner was engaged in an adult activity, his conduct should have been evaluated as would that of an adult. We agree.

Although not addressed in a formal opinion, our Supreme Court in *Constantino v Wolverine Ins Co,* 407 Mich 896; 284 NW2d 463 (1979), in lieu of granting leave to appeal, reversed an unpublished decision of this Court and remanded for a new trial on a similar instruction issue. The circuit court in *Constantino* instructed that a minor driver was not to be held to the same standard of conduct as an adult. The Supreme Court disagreed and stated:

When a minor engages in a dangerous and adult activity, e.g., driving an automobile, he is charged

with the same standard of conduct as an adult.
[*Id.*]

Thereafter, this Court in *Cornack v Sweeney,*
127 Mich App 375, 378; 339 NW2d 26 (1983), lv
den 418 Mich 917 (1984), citing *Constantino, supra,*
stated:

> There is no doubt that a minor driver is held to
> the same standard of conduct as an adult.

The trial court in this case, over plaintiff's objec-
tions, instructed the jury pursuant to SJI2d 10.06,
Ordinary Care—Minor—Definition, that defendant
Boughner's conduct in driving the truck was to be
evaluated under an ordinary standard of care for a
minor. The court stated:

> A minor is not held to the same standard of
> conduct as an adult. When I use the words "ordi-
> nary care" with respect to the minor, Mr. Bough-
> ner, I mean the degree of care which a reasonably
> careful minor of the age, the mental capacity, the
> experience of the minor, Mr. "Bone"-ner—Bough-
> ner would use under the circumstances which you
> find existed in the case. It is for you, once again, to
> decide what a reasonably careful minor would do
> or not do under such circumstances.

Plaintiff had requested that the jury be in-
structed pursuant to SJI2d 10.03, Ordinary Care—
Adult—Definition. That instruction states:

> When I use the words "ordinary care," I mean
> the care a reasonably careful person would use
> under the circumstances which you find existed in
> this case. The law does not say what a reasonably
> careful person would do or would not do under
> such circumstances. That is for you to decide.

The comment section to the adult standard of care instruction states:

> The general rule for a child as set forth in 2 Restatement Torts, 2d, § 283 A, p 14, is that "the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances." *However, there is an exception to this rule where the child is engaging in an adult activity.* This exception is set forth in the Comment on § 283 A, p 16, which states as follows:
>
> "An exception to the rule stated in this Section may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. *As in the case of one entering upon a professional activity which requires special skill (see § 299 A), he may be held to the standard of adult skill, knowledge, and competence, and no allowance may be made for his immaturity.* Thus, for example, if a boy of fourteen were to attempt to fly an airplane, his age and inexperience would not excuse him from liability for flying it in a negligent manner. The same may be true where the child drives an automobile. In this connection licensing statutes, and the examinations given to drivers, may be important in determining the qualifications required; but even if the child succeeds in obtaining a license he may thereafter be required to meet the standard established primarily for adults." [Emphasis added.]

In this case, Anthony Boughner was within five months of his eighteenth birthday when the accident occurred. Although still a minor, we believe that there is no question that Boughner was engaged in an adult activity at the time of the accident. If the Supreme Court has clearly stated that driving an automobile is an adult activity, we have no question that driving a fully loaded semi-

trailer, which requires a state-issued chauffeur's license, is likewise an adult activity. Therefore, Boughner's conduct in driving the truck should have been evaluated under an adult standard of care. Since this instruction was central to plaintiff's case, and one which could have easily misled the jury, we conclude that the trial court's failure to instruct the jury on the adult standard of care is inconsistent with substantial justice, thereby requiring that the jury verdict of no cause of action be vacated and plaintiff be afforded a new trial. MCR 2.613(A). See also *Johnson v Corbet,* 423 Mich 304, 326; 377 NW2d 713 (1985).

### ISSUE II

Plaintiff next contends that the trial court erred when it refused to allow the investigating police officer to give his opinion as to the speed of the truck immediately before the accident and the relationship between the skid marks located on the pavement and the truck. We agree.

MRE 702 provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

It is a long-established principle of Michigan law that the qualification of an expert to render an opinion is a matter which rests in the discretion of the trial court. As stated in *Mulholland v DEC International Corp,* 432 Mich 395, 406; 443 NW2d 340 (1989):

We continue to believe that the only safe rule is to ascertain with some specificity the range of the witness' qualifications and to permit testimony within that range.

Plaintiff's first witness in this case was State Police Trooper Mark Calcatera. In 1973 he attended the State Police Recruit School and obtained training in basic accident investigation. He returned in 1974 and had additional training. In 1979, he attended a month-long class at Northwestern University's Traffic Institute to become an advanced accident investigator. Trooper Calcatera was called to investigate the roll-over truck accident on the morning of March 15, 1980. When he arrived at the scene, he saw a semitrailer laying on its top near the intersection of M-24 and I-69. He observed some scuff marks in the grass portion of the shoulder, some skid marks and debris from glass breakage on the highway. He and another officer took measurements of skid marks. Trooper Calcatera drew scale diagrams of the scene and performed skid testing to determine the coefficient of friction on the roadway and the shoulder surfaces. Although this accident was the first one he had investigated, by the time of trial in 1988, he had investigated some 2,000 accidents.

The trial court immediately expressed concern over the applicability of the skid test results because the trooper had used his patrol car to make this determination. In addition, the court became concerned that, since no one actually saw the semitrailer skidding on the pavement, Trooper Calcatera could not testify that, in his opinion, the truck caused the skid marks measured at the accident scene. The court stated:

*The Court:* Well, I think at this point in time,

there hasn't been any certification that he is an expert in anything. He can just testify what he did and describe what that document means but not express opinions . . . .

*    *    *

He can explain the document, he can explain his measurements, what he did but he's not an expert to render any opinion in this court.

*    *    *

He can show skid marks, distances, where things were but he can't give an opinion because he didn't see the vehicle when it was moving.

After further attempts to qualify Trooper Calcatera, the court stated:

I am satisfied, with no necessary argument any further, that this witness simply does not meet the foundational test to give opinion evidence in the area of how fast this truck vehicle was travelling from skid marks because he cannot even collate the skid marks to this particular vehicle.

The range as suggested here of 40 to 70 miles an hour kind of surprises me as a lay person. I don't do investigations but I think it would be highly misleading and inappropriate to allow this witness to give an opinion regarding the speed of this vehicle, and I'm pleased that we did it in the absence of the jury because I think a lot of these questions would be inappropriately in front of the jury.

This Court in *Jenkins v Frison Building Maintenance Co*, 166 Mich App 716, 719, 721; 421 NW2d 275 (1988), lv den 431 Mich 867 (1988), addressed a similar challenge to test results proffered by the plaintiff. This Court explained:

The issue of the admissibility of results from tests conducted by experts has been addressed

frequently in the Michigan appellate courts. We believe a holding in an older case most accurately states the law:

" 'It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented.' " 22 CJ, p 759.

\* \* \*

" 'This similarity need not be precise in every detail. *It need include only those circumstances or conditions which might conceivably have some influence in affecting the result in question.*' " 1 Wigmore on Evidence, § 442.

" 'The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible.' *Atlanta [& W P] R Co v Hudson,* 2 Ga App 352, 354 (58 SE 500) [1907]." [*Smith v Grange Mutual Fire Ins Co of Michigan,* 234 Mich 119, 126-127; 208 NW 145 (1926).]

It was the trial court's opinion that the tests involved were so totally dissimilar to the conditions at the time of the fall that it would be "highly prejudicial" to admit the results of the test.

\* \* \*

*However, the lack of exact identity of test and accident conditions goes to the weight and not the competency of the evidence. Smith, supra* at 126. We believe the expert's testimony would have assisted the jury in intelligently considering the issue of fact presented in regard to the issue of defendant's negligence. It would have been the

jury's function then to assess the expert's testimony and the significance of the variable of plaintiff's recollection.

We reverse. When competent, material and relevant evidence on an essential issue has been excluded, when the party offering the evidence has received an adverse factual determination of the issue, and when consideration of the excluded evidence might have resulted in a different finding, this Court has held the exclusion to be error requiring reversal. [Emphasis added.]

Having thoroughly reviewed the entire testimony of Trooper Calcatera, we are convinced that the trial court improperly excluded relevant and material expert opinion evidence. Although some of Trooper Calcatera's calculations were subject to attack, we believe those criticisms were matters going to the weight of his testimony as opposed to its admissibility. Moreover, we note that the trial court improperly focused on the fact that the instant accident was the first the officer investigated. Again, this criticism goes to the witness' credibility and the weight the jury should have afforded his testimony.

A witness may be qualified as an expert if he or she has acquired specialized knowledge through experience, training, or education. *De Voe v C A Hull, Inc,* 169 Mich App 569, 579; 426 NW2d 709 (1988), lv den 431 Mich 862 (1988). A witness need not possess specialized knowledge as a result of experience as well as training and education in order to be qualified as an expert. Simply, although Trooper Calcatera did not acquire his specialized knowledge through experience as of the date of the accident, he had specialized knowledge through his training and education. Toward that end, we hold that the trial court abused its discretion in failing to qualify Trooper Calcatera as an

expert and in preventing him from testifying as to his opinion of the truck's speed before the accident and the possible origin of the skid marks measured at the scene of the accident.

ISSUE III

We next address the issues raised on cross appeal. Defendants Pamela and Kenneth Timm first contend that the trial court erred in denying their motion for summary disposition based upon MCR 2.116(C)(10), no genuine issue of material fact, that Clarence Osner was their employee. The Timms' motion sought to bar plaintiff's claim against them on the basis of the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131). We disagree.

A summary disposition motion based on a lack of a genuine issue of material fact tests whether there is factual support for the claim. MCR 2.116(C)(10). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. Giving the benefit of any reasonable doubt to the nonmoving party, the court must determine whether the type of record which might be developed would leave open an issue upon which reasonable minds might differ. *Fulton v Pontiac General Hospital,* 160 Mich App 728, 735; 408 NW2d 536 (1987). This Court is liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973).

The exclusive remedy provision of the workers' compensation act provides:

The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. [MCL 418.131; MSA 17.237(131).]

In this case, the truck involved in the accident was owned by defendants Pamela and Kenneth Timm and leased to R-W Service System, Inc. R-W Service System was dismissed from the suit before trial on the basis of the exclusive remedy provision of the workers' compensation act. However, the trial court ruled that the Timms were not Clarence Osner's employers because the Timms did not pay any workers' compensation premiums and did not pay any benefits after the accident. The trial court concluded that Osner had but one employer, R-W Service System, Inc.

The courts of this state look to the economic reality test when questions arise relative to the existence of an employment relationship. The economic reality test examines the totality of the circumstances surrounding the employment relationship. *Andriacchi v Cleveland Cliffs Iron Co*, 174 Mich App 600, 605; 436 NW2d 707 (1989). The factors recognized as relevant in analyzing the nature of the relationship are: (1) control of the worker's duties, (2) payment of wages, (3) the right to hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Id.* Under the economic reality test, the common-law test of control is only one factor to be considered by a court. Additionally, other factors such as payment of wages, hiring and firing, and responsibility for maintenance of safety and discipline are all considered. *Id.,* pp 605-606. All factors are viewed cumulatively; however, no single factor conclusively establishes the existence or absence of an employer-employee relationship. *Id.,* pp 605-606. See also *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976).

In this case, we are convinced that the trial court was correct in determining that there was

no genuine issue of fact that the Timms did not employ Clarence Osner.

First, regarding the control over Osner's duties, the record establishes Osner's freight assignments were given to him from R-W. The Timms owned the tractor-trailer rig and leased it to R-W which, in turn, hired Osner to drive the truck. Second, the payment of Osner's wages was not under the direct control of the Timms. Osner was paid by R-W Service System, Inc. Third, while the Timms could withdraw their consent for Osner to operate their truck, they had no authority to terminate his employment with R-W. Moreover, the Timms could not discipline Osner, other than not allowing him to drive their truck. Fourth, Osner's performance of his duties does not seem to have formed an "integral part of [the Timms'] business toward the accomplishment of a common goal." The Timms' business was owning trucks and in turn leasing them out to other businesses. Osner's performance of his duties was at best indirect or auxiliary to the Timms' business and could more accurately be described as an integral part of R-W's business.

We also note Kenneth Timm's deposition states Osner was not his employee. In addition, Pamela Timm signed an affidavit claiming that Osner was not an employee of the Timms. Despite the fact the Timms subsequently changed their position and later filed affidavits claiming Osner was their employee, this evidence was insufficient to leave open an issue upon which reasonable minds might differ. Simply, the facts overwhelmingly showed that Clarence Osner was not an employee of the Timms. Therefore, the trial court properly denied the Timms' motion for summary disposition.

### ISSUE IV

The Timms next contend that the trial court

erred in denying their motion for summary disposition because Anthony Boughner did not have their consent to operate the tractor-trailer at the time of the accident and, therefore, plaintiff had no cause of action under the motor vehicle owners' civil liability statute.

The Timms brought their motion for summary disposition on two grounds. First, they claimed that plaintiff's complaint had failed to state a claim because plaintiff did not allege that the truck was driven by Boughner with their consent, and, second, that there was no genuine issue of material fact that Boughner was not given consent to operate the truck.

A motion for summary disposition pursuant to MCR 2.116(C)(8) tests only the legal sufficiency of the pleadings. The court must accept as true all well-pled factual allegations as well as any conclusions which can reasonably be drawn therefrom. The court may grant the motion only when the claim, on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify the right to recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323; 343 NW2d 164 (1984), reh den 419 Mich 1201 (1984), cert den sub nom *E R Squibb & Sons, Inc v Abel,* 469 US 833; 105 S Ct 123; 83 L Ed 2d 65 (1984).

In this case, plaintiff's complaint pled that the Timms were the owners of the tractor-trailer involved in the accident and that they were negligent or grossly negligent in the maintenance and operation of the truck. The motor vehicle owners' civil liability statute, MCL 257.401; MSA 9.2101, at the time plaintiff's cause of action was brought, in pertinent part provided:

Nothing herein contained shall be construed to

abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires [sic]. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge.

Since plaintiff pled the Timms owned the tractor-trailer and that they were negligent in its operation, we believe that plaintiff's complaint sufficiently pled a claim under the owners' liability statute. Taking these allegations as true, one reasonably could conclude that facts might be developed which could establish that the Timms expressly or impliedly consented to Anthony Boughner's driving their truck, thereby stating a claim under the act. Next, as for there being a genuine issue of material fact regarding the issue of consent, the civil liability statute provides for liability if the vehicle owner impliedly consents to another driving the vehicle. A motion for summary disposition based upon no genuine issue of fact tests only whether a record might be developed which would leave open an issue upon which reasonable minds might differ. Implied consent has been defined as "that manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption that the consent has been given." Black's Law Dictionary (5th ed), p 276.

In the case at bar, there is no dispute that the Timms expressly consented to Clarence Osner's

driving their truck. Although Osner was also expressly restricted from letting others drive the truck, implied consent has been found in Michigan when a driver with consent disobeys the owner's admonitions not to let anyone else drive the vehicle. See *Cowan v Strecker,* 394 Mich 110; 229 NW2d 302 (1975). That being the state of the law, we believe that reasonable minds might differ on whether the Timms impliedly consented to letting anyone else drive their truck who had been allowed to do so by Clarence Osner. Therefore, the trial court did not err in denying the Timms' motion for summary disposition.

### ISSUE V

Finally, the Timms contend that plaintiff should not have the benefit of the owners' civil liability statute because her husband was not an innocent third party. They argue that the clear purpose of the civil liability statute is to safeguard the public. In addition, they reason that the statute extended liability beyond traditional common law limits only to protect fully innocent third parties from the negligent operation of motor vehicles by non-owners. Since Clarence Osner was not an innocent third party, his estate should not be able to bring a cause of action under the statute.

Plaintiff counters that the Timms are focusing on the nature of the person harmed, rather than on the issue of consent. Plaintiff contends that the statute only addresses whether the person driving the vehicle was doing so with the express or implied consent of the owner. Once the Timms gave the keys to the truck to Clarence Osner, they are deemed to have given implied authority for literally any person to drive it. Therefore, once consent is found, the statute automatically applies

to impose liability. Lastly, plaintiff argues the statute makes no distinction between classes of persons harmed and, if a person is harmed due to the negligence of a driver with implied consent, that person is able to seek redress from the vehicle owner under the statute.

We begin by noting that the Legislature in enacting the owners' liability statute provided for "any person" to prosecute a civil action for any injury occasioned by the negligent operation of the vehicle, if the vehicle is driven with the owner's express or implied consent. A cardinal rule of statutory construction is that courts may not speculate as to the probable intent of the Legislature beyond the words employed in the statute. A word or phrase in a statute is to be given its plain and ordinary meaning. *Van Dam v Grand Rapids Civil Service Bd*, 162 Mich App 135, 138; 412 NW2d 260 (1987). When the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted. Such a statute must be applied, and not interpreted, since it speaks for itself. *Van Dam, supra.*

Our Supreme Court in *Cowan, supra,* interpreted the term "consent" in the owners' liability statute in a manner which we believe supports plaintiff's arguments. The Supreme Court clearly held that the term "consent" as it is used in the owners' liability statute must be construed to effectuate the policy of the act—that is, to place the risk of damage or injury upon the person who has ultimate control of the vehicle. *Id.,* p 115.

In *Cowan,* the defendant vehicle owner loaned her car to another person with specific instructions that she not let anyone else drive the car. This admonition was disobeyed and a third person was allowed to drive the defendant's car without the defendant's knowledge. While the third person was

driving, an accident occurred in which the plaintiff was injured. The defendant argued that liability under the owners' civil liability statute was avoided because there was no consent on her part to use of her vehicle by the injuring driver. The Supreme Court disagreed, stating:

> *[W]hen an owner willingly surrenders control of his vehicle to others he "consents" to assumption of the risks attendant upon his surrender of control regardless of admonitions which would purport to delimit his consent.* It must be so, or the statutory purpose would be frustrated. As the Court of Appeals, after summarizing the holding in *Roberts* [*Roberts v Posey*, 386 Mich 656; 194 NW2d 310 (1972)], so well stated in resolving this case:
>
> "The specifics of any limitations imposed by the owner are irrelevant to the statute's effectuation of its purpose. Whatever the limitations, once the owner has turned his keys over to another, he is powerless to enforce those limitations. Several thousand pounds of steel are being moved upon the public highway because the owner consented thereto. Even if the individual who borrowed the car has deviated from his instructions, the car is being operated on the highway because the owner consented thereto. *If the car is involved in an accident, the owner is liable because of that consent.*" [*Id.,* p 115. Emphasis added.]

We are persuaded that the same reasoning applies to the facts of this case. Although the Timms point to some sister state authority for the proposition that noninnocent third parties may not recover under somewhat similar statutes, we believe our Supreme Court's holding in *Cowan* is clear. The Legislature in enacting the statute chose not to limit the applicability of the owners' liability statute exclusively to innocent parties. Rather, "any person" is granted authority to pursue a civil

action. There is no restriction limiting who may bring such an action by examining the culpability of the person who has given consent to drive the owner's vehicle. Absent such a limitation, we will not judicially engraft such a requirement on persons seeking to establish a claim under the statute. It appears that the Timms' argument is better framed as being one asserting Osner's comparative negligence or perhaps an indemnification issue, if plaintiff prevails. However, the Timms do not raise any such matter in this appeal. Therefore, we hold that plaintiff in this case is not precluded from pursuing her cause of action under the owners' civil liability statute.

### CONCLUSION

The trial court's judgment of no cause of action is reversed and the case remanded for a new trial. Defendant Anthony Boughner's conduct in driving the truck is to be evaluated under an adult standard of care. In addition, Trooper Calcatera should be allowed to testify as to his opinion as to the truck's speed and the possible origin of the skid marks for which a sufficient foundation has been laid. The Timms' motion for summary disposition was properly denied by the trial court and plaintiff is not precluded from pursuing her cause of action under the owners' liability statute.

Reversed and remanded for proceedings consistent with this opinion.