GREEN v GENERAL MOTORS CORPORATION

Docket No. 47915. Submitted February 11, 1981, at Lansing.—Decided March 5, 1981.

Doris Green and her son, Martin Green, were seriously injured when the car Mrs. Green was driving, and in which Martin Green was a passenger, went out of control and skidded into a tree. Mrs. Green, individually and as next friend of Martin Green, brought an action against General Motors Corporation, manufacturer of the car, in Tuscola Circuit Court, charging that the left rear axle of the car had been defectively manufactured and had fractured, causing Mrs. Green to lose control of the car. Defendant contended that the axle was fractured upon the car's impact with the tree. The trial court, Patrick R. Joslyn, J., allowed defendant to introduce, over plaintiffs' objections, a motion picture and related photographs showing the effect of frontal impact upon the rear axles of several vehicles. The jury returned a verdict for defendant. Plaintiffs appeal, contending the movie was inadmissible and irrelevant. *Held:*

The admission of visual aids and motion picture evidence is a matter left to the discretion of the trial court. The point which the movie tended to prove was that it was physically possible for the frontal impact of the plaintiffs' vehicle with the tree to have caused the axle fracture. The movie did not attempt to reenact the accident and there was no potential for jury confusion as to the purpose of the movie. The trial court did not err in admitting the motion picture evidence.

Affirmed.

1. EVIDENCE — PHOTOGRAPHIC EVIDENCE — EXPERT WITNESSES — REENACTMENT OF ACCIDENT.

Photographic evidence by an expert witness offered to reenact an

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 485, 783, 785, 789.

Authentication or verification of photographs as basis for introduction in evidence. 9 ALR2d 899.

[2] 29 Am Jur 2d, Evidence §§ 783, 785-788, 801.

Use of motion pictures as evidence. 62 ALR2d 686.

Authentication or verification of moving picture as basis for introduction in evidence. 9 ALR2d 921.

accident must show conditions virtually identical to those existing at the time of the accident in order to be admissible.

2. EVIDENCE — VISUAL AIDS — MOTION PICTURES.

The admissibility of visual aids, including motion pictures, as evidence is a matter left to the discretion of the trial court.

*Walpole & Holmes* (by *Brian R. Schrope)*, for plaintiffs.

*Smith & Brooker, P.C.* (by *Thomas A. Connolly* and *Webster Cook)*, for defendant on appeal.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

PER CURIAM. This case arises from a one-vehicle accident which took place on December 22, 1973, in Tuscola County. Plaintiff, Mrs. Doris Green, testified that she was driving north on Unionville Road with her son, plaintiff Martin Green, in her 1972 Vega. She said that there were patches of ice and snow on the road large enough to make a car slide as it traveled along the road. Mrs. Green stated that she was driving at about 35 mph when she heard a noise in the rear of the car, lost control of the steering, and skidded into a tree by the side of the road. Both plaintiffs were seriously injured.

Sheriff's Deputy Larry Walker investigated the accident. He stated that he noticed that the car was seriously damaged on the front and left side, and that it had struck the tree at an angle but with considerable impact. He also noted that the rear axle was projecting outward from the wheel to some degree. It became apparent that the left rear axle had been fractured at some point.

Plaintiffs brought this action against General Motors Corporation, charging that the axle was

defective and that it had caused the accident. Plaintiffs contended that a manufacturing defect caused the axle to fracture, which in turn affected Mrs. Green's ability to steer and caused her to lose control of the car. Defendant's theory was that the fracture of the axle came only after impact with the tree. Defendant's expert testified at trial that the fracture was caused when the force of impact with the tree was transmitted rearward through the drive train of the car.

The trial court admitted, over plaintiffs' repeated objections, a motion picture and related photographs made by defendant which showed the effect of frontal impact upon the rear axles of several vehicles. Specifically, the movie showed four automobiles, a 1971 Vega, a 1974 Plymouth, a 1974 Ford, and a 1975 Buick crashing head-on into a solid wall at thirty miles per hour. Defendant stated that its purpose in showing the film was not to reenact the accident, but to "graphically illustrate" the expert testimony describing the forces which transmit frontal impact to the rear axle assembly of the typical rear-wheel drive automobile. Defendant's expert testified on several occasions, both in and out of the presence of the jury, that the differences between the conditions in the movie and those in the plaintiffs' accident, while considerable, did not affect the physical principles which he sought to explain. The jury returned a verdict for the defendant. Plaintiffs appeal as of right.

Plaintiffs contend that the differences in the makes and sizes of the vehicles, the types of barriers, the speeds and the angles of impact were sufficient to render the movie inadmissible and irrelevant under the Michigan Rules of Evidence. Plaintiffs cite a number of cases for the proposi-

tion that motion pictures or photographs are only admissible if they are virtually identical to what they purport to show. *Birkhill v Todd,* 20 Mich App 356; 174 NW2d 56 (1969), *Kolcon v Smewing,* 28 Mich App 237; 184 NW2d 244 (1970), *Dennis v Jakeway,* 53 Mich App 68; 218 NW2d 389 (1974). In each of these cases, however, the photographic evidence was offered to re-create the scene of the accident, unlike the movie in the present case.

Plaintiffs also cite *Manning v Lake Superior & Ishpeming R Co,* 4 Mich App 316; 144 NW2d 831 (1966), and *Grand T W R Co v Pre-Fab Transit Co, Inc,* 14 Mich App 26; 165 NW2d 281 (1968). Both of these cases involve an attempt to use photographic evidence to demonstrate how the accident *might have* occurred. Even though the evidence was not strictly used to reenact the accident in the latter two cases, it was still essential that the photographic representation be almost exact. This was so because the focus of the photographic evidence in all of the above cases was on the conditions surrounding the particular accident in question.

The movie in the present case is distinguishable. The purpose of the movie was not to illustrate plaintiffs' particular accident, but to act as a visual aid in illustrating the expert's testimony describing the forces which transmit frontal impact to the rear axle assembly of the typical automobile. This Court has previously upheld the use of visual aids which are not necessarily exact representations of the objects which they are intended to depict. *Jackson v Sabuco,* 21 Mich App 430, 436; 175 NW2d 532 (1970). This Court has also emphasized that the admission of visual aids as evidence is a matter left to the discretion of the trial judge. *Id.* This is also the rule with motion picture evi-

dence. *Rogers v Detroit,* 289 Mich 86; 286 NW 167 (1939).

Several opinions from other jurisdictions which are governed by rules of evidence similar, if not identical, to the Michigan Rules of Evidence have upheld the admission of photographic evidence whose purpose is to illustrate expert testimony about physical forces. In these cases, photographic evidence was offered despite objections that the evidence depicted conditions noticeably different from those surrounding the event in question. In *Young v Illinois C G R Co,* 618 F2d 332 (CA 5, 1980), plaintiff, the widow of a motorist killed in a railroad accident, sought to admit a "motion picture experiment" in conjunction with expert testimony describing the alleged dangerousness of the railroad crossing. The motion picture was offered to show that it was physically possible that the design of the crossing caused plaintiff's accident. Observing that the average layman would not understand a description of all of the physical factors involved in evaluating the design of such a crossing, the Court of Appeals found an abuse of discretion in the lower court's exclusion of the movie:

"The motion picture experiment was not offered to reenact the accident but was presented only to show that under the circumstances of this case it was physically possible for Mr. Young's car to have been diverted onto the railroad track. In a relatively recent case a district court in Pennsylvania displayed a logical approach to this question.

" 'The film in question was offered to demonstrate certain principles of physics. It functioned as a graphic portrayal of the expert's oral testimony about Newton's laws of motion * * * I saw no prejudice to the plaintiff in permitting the jury to see it. In any event, plaintiff's counsel was afforded ample opportunity to cross-exam-

ine defendant's expert and to explore the differences between what the film depicted and the accident at issue in the instant case.' " *Young, supra,* 388, quoting *Zurzolo v General Motors Corp,* 69 FRD 469, 473 (ED Pa, 1975).

Accord, *Saldana v Wirtz Cartage Co,* 74 Ill 2d 379; 385 NE2d 664 (1978), *Brown v North American Manufacturing Co,* 576 P2d 711 (Mont, 1978), *Lahocki v Contee Sand & Gravel Co, Inc,* 41 Md App 579; 398 A2d 490 (1979), *rev'd on other grounds,* 286 Md 714; 410 A2d 1039 (1980).

The trial in *Young, supra,* was governed by the Federal Rules of Evidence. FRE 401 defines relevant evidence as follows:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The corresponding Michigan rule, MRE 401, is identical. The trial court in the present case relied specifically on MRE 401 in admitting the motion picture. The point which the movie tended to prove was the expert's conclusion that it was physically possible for the frontal impact of plaintiffs' vehicle with the tree to have caused the axle fracture. The movie did not create the impression of reenacting the accident, nor was there any potential for jury confusion as to the purpose of the movie. Furthermore, since defendant's expert stated on several occasions that variations in the sizes and makes of vehicles, types of barriers, and speeds at impact did not affect his conclusion about the physical forces involved, the trial court properly exercised its discretion in admitting the

movie for the purpose of illustrating that conclusion. Thus, we conclude that the trial court did not err in admitting the motion picture evidence.

Affirmed. Costs to defendant.