LOPEZ v GENERAL MOTORS CORPORATION

Docket No. 164400. Submitted February 14, 1997, at Lansing. Decided July
22, 1997, at 9:10 A.M. Leave to appeal sought.

Misti S. Lopez brought a products liability action in the Shiawassee
Circuit Court against General Motors Corporation, alleging that she
sustained enhanced injuries in an automobile accident because of a
malfunction in the seat belt system for the driver's seat of a 1987
Chevrolet Chevette manufactured by the defendant. The court, Ger-
ald D. Lostracco, J., entered judgment on a jury verdict of no cause
of action. The plaintiff appealed, claiming, among other things, that
the trial court abused its discretion in admitting into evidence vide-
otapes of "sled" and "frontal barrier" tests performed by the
defendant years before the plaintiff's accident on Chevettes of
model years earlier than that of the plaintiff's vehicle. The Court of
Appeals, BANDSTRA and W. P. CYNAR, JJ., constrained by Administra-
tive Order No. 1996-4 to follow *Sumner v General Motors Corp*, 212
Mich App 694 (1995), and WHITE, P.J., following *Sumner* in the
belief that it was decided correctly, reversed and remanded for a
new trial. 219 Mich App 801 (1996). Under *Sumner*, demonstrative
evidence in the form of results obtained in out-of-court experi-
ments is not admissible if the proponent of the evidence
attempts to apply the general principles illustrated in the tests to
the specific fact question at issue. A majority of the judges of the
Court of Appeals voted to convene a special panel to resolve the
conflict that would have been created but for Administrative Order
No. 1996-4.

Following consideration by the special panel convened pursuant
to Administrative Order No. 1996-4, the Court of Appeals *held*:

1. The decision in *Sumner* is wrong insofar as it deviated from
*Smith v Grange Mut Fire Ins Co of Michigan*, 234 Mich 119 (1926).
Under *Smith*, it is not necessary that the conditions of the out-of-
court experiment and those involved in a case be identical; reason-
able or substantial similarity is sufficient, and the lack of exact
identity affects only the weight, and not the competency, of the evi-
dence, provided that there is such a degree of similarity that evi-
dence of the experiment will assist the jury in intelligently consid-
ering factual issues.

2. The trial court did not abuse its discretion in admitting videotapes of the crash tests as evidence under the standard set in *Smith*. Any error that may have arisen as a result of the unlimited admission and use of the videotape evidence could have been cured by cautionary instructions to the jury, and the plaintiff has waived appellate review of any such claimed error inasmuch as she did not request any such cautionary instructions.

3. The videotapes of the crash tests were admissible under the business record exception to the hearsay rule, MRE 803(6).

4. The trial court did not abuse its discretion in permitting defense expert witness David Peruski to testify about occupant kinematics and biomechanics even though the defendant had named another person during discovery as its expert with regard to those areas. Peruski was qualified to testify about those areas on the basis of his professional experience, and the plaintiff cannot claim surprise or prejudice because Peruski's testimony was essentially the same as that given by the other expert in a videotaped deposition.

5. The issue concerning alleged errors committed by the trial court when instructing the jury about enhanced injury need not be addressed because the jury never reached the question of damages.

Affirmed.

1. EVIDENCE — EXPERIMENTS — ADMISSIBILITY.

Demonstrative evidence in the form of results obtained in an out-of-court experiment are admissible where the conditions of the experiment and those involved in a case are reasonably and substantially similar; the lack of exact identity affects only the weight, and not the competency, of the evidence, provided that there is such a degree of similarity that evidence of the experiment will assist the jury in intelligently considering factual issues in the case.

2. EVIDENCE — APPEAL — STANDARD OF REVIEW.

Decisions concerning admission of evidence are reviewed under an abuse of discretion standard and reversal is unwarranted merely because reviewing appellate judges would have ruled differently.

3. EVIDENCE — ADMISSIBILITY.

In the absence of a limiting instruction, evidence generally admitted may be used for any and all purposes.

4. EVIDENCE — FAILURE TO REQUEST LIMITING INSTRUCTIONS.

Where evidence is properly admitted for one purpose, but may also be limited to a particular purpose, the failure to request a limiting instruction directing that the jury may consider that evidence only

for a limited purpose waives any error associated with the general admission of challenged evidence.

*Beltz & Associates* (by *Charles D. Riley*), for the plaintiff.

*Reynolds, Beeby & Magnuson* (by *Dawn Reveley Martin* and *Michael C. McKinnon*), and *Kirkland & Ellis* (by *J. Andrew Langan*), for the defendant.

Before: HOLBROOK, JR., P.J., and MACKENZIE, GRIBBS, FITZGERALD, HOEKSTRA, MARKMAN, and YOUNG, JJ.

YOUNG, J. Plaintiff brought suit against defendant alleging negligence and breach of an implied warranty as a result of injuries she sustained in an accident in an automobile manufactured by defendant. Plaintiff appealed from a judgment of no cause of action entered by the Shiawassee Circuit Court following a jury verdict that defendant was not negligent and did not breach an implied warranty. A panel of this Court reversed and remanded for a new trial because of the admission and use of two videotapes depicting crash tests conducted by defendant. *Lopez v General Motors Corp*, 219 Mich App 801 (1996). However, two members of that panel concurred in the reversal solely because they were constrained by Administrative Order No. 1996-4 to follow *Sumner v General Motors Corp*, 212 Mich App 694; 538 NW2d 112 (1995).

Pursuant to the conflict invoked by the concurring members of the *Lopez* panel under Administrative Order No. 1996-4, the members of this Court were polled and a majority voted to convene this conflict panel. On December 30, 1996, an order was entered convening this panel and vacating the *Lopez* opinions.

For the reasons stated below, we overrule *Sumner* insofar as it establishes an evidentiary rule concerning the introduction of demonstrative evidence different from that set forth in *Smith v Grange Mut Fire Ins Co of Michigan*, 234 Mich 119; 208 NW 145 (1926). We affirm the circuit court judgment entered in this case.

I

FACTUAL BACKGROUND

Plaintiff's lawsuit arises out of a single-car accident that occurred in the dark early morning hours of January 10, 1989. Plaintiff was driving a 1987 two-door Chevrolet Chevette hatchback manufactured by defendant General Motors Corporation. Ms. Lopez drove her Chevette to an intersection with a stop sign and thereafter into the side of a freight train parked across a subsequent intersection. Plaintiff estimated that she may have been traveling as fast as twenty-one or twenty-two miles an hour at impact.[1] Although plaintiff was wearing the lap and shoulder belt supplied by the defendant with the automobile, she sustained substantial facial and upper-body injuries as a result of the accident. Plaintiff brought a product liability action against defendant, alleging that she sustained her injuries because the seat belt restraint system in her Chevette failed on impact.

A lengthy trial ensued. As noted, the jury returned a verdict of no cause of action in favor of defendant.[2]

---

[1] There is conflict in the record concerning the speed at which plaintiff struck the train. Defendant's experts opined that plaintiff was traveling twenty-five miles an hour at impact.

[2] The verdict was returned by special verdict form, on which the jury specifically found no negligence or breach of warranty.

Of central importance to this appeal was the trial court's admission of two videotapes of crash tests conducted by defendant on Chevettes—so-called "sled" and "frontal barrier" tests[3]—and the use of these tests by defendant's experts during trial.

II

THE NATURE OF THE PARTIES' EVIDENTIARY DISPUTE

At trial, plaintiff's liability theory was that, because of an alleged manufacturing defect in the retractor mechanism of the Chevette's shoulder belt restraint system, the shoulder belt failed initially to engage properly, or if it engaged initially, it broke on impact, causing plaintiff's face and body to strike the steering

---

[3] The two tests (and their similarity and dissimilarity to the facts of plaintiff's collision) were described in significant detail in the lead opinion of *Lopez, supra.* For the sake of completeness, we briefly describe the general features of the two tests here.

In the sled test, a vehicle body is accelerated in reverse to simulate a frontal collision. The test simulated frontal impact at thirty miles an hour and was run on a Chevette body similar to plaintiff's automobile. The movements of the dummies in the vehicle seats can be observed and, although restrained in a three-point lap and shoulder seat belt similar to the one in plaintiff's vehicle, the "driver" dummy's head and upper body make contact with the steering wheel in the simulated impact. The sled test shown to the jury was conducted in 1986 for the purpose of testing seat belt systems.

The crash test, conducted in 1977, involved a speed of 30.7 miles an hour. The dummies in the crash test were four inches taller and fifty pounds heavier than plaintiff. The objective of the test was to analyze the crash performance of a vehicle with fenders of reduced-gauge metal (in the crash test shown to the jury, the gauge of the metal fenders of the test vehicle was reduced by 0.003 inches). The crash test involved a direct frontal crash, whereas it was acknowledged that there was some angle in the impact of plaintiff's collision. This videotape clearly showed "involvement" between the driver dummy's head and the steering wheel. The restraint system involved was comparable to that in plaintiff's vehicle.

wheel.[4] Plaintiff's theory was supported by her expert witness, Henry Kowalski.

Defendant's theory at trial was that there was no defect in the restraint system, that it operated properly, and that the type of injuries plaintiff received were of a kind to be expected in accidents such as plaintiff's. Defendant's position was supported by expert witnesses Karen Morley and David Peruski. Morley testified[5] as an expert in occupant kinematics (body movements) and biomechanics (how bodies react to forces). Peruski testified about the operation of the restraint system and the retractor mechanism. Peruski testified with the aid of the videotapes of the sled test and the frontal-barrier crash test. The videotapes showed the movement of dummies in test vehicles during the crashes. The heads of the "driver" dummies in the two tests could be seen to strike the steering wheel even though they were restrained by a three-point lap and shoulder safety belt system. At trial, after being ruled qualified to do so, Peruski also testified about occupant kinematics. He did so again with specific reference to the videotaped tests. It was the opinion of both Peruski and Morley that the restraint system functioned properly and that plaintiff's injuries were consistent with a properly functioning restraint system.

At trial and on appeal, plaintiff primarily challenges the admission of the two videotapes of the test

---

[4] Plaintiff claimed that her injuries were "enhanced" because she received more extensive injuries due to the seat belt's failure than she would have otherwise received in the collision. Plaintiff assigns error to the instructions that the trial court gave to the jury concerning this enhanced-injury claim. This issue is addressed in § III of this opinion.

[5] Morley's videotaped deposition was played to the jury because she was unavailable for trial, having recently delivered a baby.

crashes. Before the commencement of defendant's case in chief, the trial court addressed plaintiff's challenges to the admission of the two videotapes in response to plaintiff's oral motion in limine. Defendant offered the two tapes as business records, asserting that they were relevant to the issue of due care, demonstrating that defendant tested its seat belt system. Defendant further asserted that the tests were critical as necessary aids to the testimony of defendant's experts concerning general principles of occupant kinematics in a frontal crash. Defendant acknowledged that the two tests were conducted before plaintiff's accident and conceded that the tests were not intended as re-creations of the accident at issue, but were offered as demonstrative evidence that was "substantially similar" to that accident.[6]

In the circuit court, plaintiff objected to the admission of the videotapes of the tests on several grounds: (1) lack of foundation,[7] (2) the tests were not relevant because they did not replicate the identical conditions of plaintiff's collision,[8] and (3) the results of the tests

[6] Defendant further conceded that there were differences between the conditions of the two crash tests and plaintiff's accident. Defendant's counsel argued during the motion in limine that "it isn't necessary to support our experts' opinions and support our defense to have a test that's, you know, as your Honor says, a complete duplication. . . . These tests absolutely demonstrate to the jury and the Court what the kinematics are in an accident like this. Mr. Kowalski [plaintiff's expert] agrees that they would be helpful. Mr. Peruski and Miss Morley rely on them for purposes of their opinion. *And they should come in subject to whatever cautionary instructions may be appropriate.*" (Emphasis added.)

[7] Defendant did not present a "record custodian" to testify about these business records or anyone who actually performed, or was involved in creating, the two tests. Instead, defendant relied primarily upon its expert, Peruski, to lay the necessary foundation.

[8] See n 3. On appeal, plaintiff cites and relies upon principally the following defense admissions of dissimilarity between the tests and plaintiff's accident:

were inadmissible, prejudicial hearsay.[9]

The trial court found that the videotapes were proper business records under MRE 803(6); that, because the defendant was offering the videotapes as demonstrative evidence rather than as a re-creation of the plaintiff's accident, the dissimilarities between the tests and the accident went not to the admissibility of the evidence, but to its weight; and that the evidence was relevant and not more prejudicial than probative. Accordingly, the court allowed admission of the videotapes without limitation, and plaintiff requested no limiting instruction.

As stated, this Court initially reversed, concluding that the tests violated the rule propounded in *Sumner*, and held as follows:

> The defense was in essence using the tests to prove that the severity and extent of the plaintiff's injuries were the normal results of a frontal collision. The record establishes that the videotapes were used well beyond the illustration of general scientific principles and their admission was error [sic]. Under these circumstances, I am unable to con-

---

(1) The crash test involved a modified model of the Chevette that was run into a barrier at thirty miles an hour, a speed at least four to six miles faster than the evidence suggested that plaintiff's car was traveling on impact.

(2) The crash-test model had fenders that were of thinner-gauge metal than those of plaintiff's vehicle.

(3) Plaintiff weighed 125 pounds and was 5' 3" tall, whereas the crash-test dummy weighed 175 pounds and was 5' 7" tall.

(4) The disparity between plaintiff's physical characteristics and those of the dummy resulted in an increase of force on the restraint system in the crash test twice that involved in plaintiff's collision.

[9] On appeal, plaintiff asserts as an additional basis of objection, which it failed to raise at trial, that the tests did not accurately reflect the scientific principles involved in this case. This additional argument is largely refuted by plaintiff's own expert who conceded that the tests would be the best way to illustrate physical principles involved in a collision and that he would "love to see" defendant's tests.

clude that the videotapes of the tests were properly admitted *as limited*[10] to establishing general principles of occupant kinematics or as having been conducted under conditions substantially similar to plaintiff's accident.

Crucial to the liability issue was the question whether under these accident conditions, a properly functioning seat belt would be expected to restrain this plaintiff to the extent that she would not have suffered the injuries she did. The experts disagreed with regard to this issue. However, defendant's experts' testimony was buttressed by the videotapes depicting the dummies of a dissimilar size, traveling at a dissimilar speed, hitting the steering wheel. Like the Court did in *Sumner, supra,* I conclude that the evidence addressed a major issue in the case and was visually compelling. Therefore, the admission of the tapes was not harmless. [*Lopez, supra* at 812-813 (emphasis added).]

### A. BUSINESS RECORD EXCEPTION

Two of plaintiff's evidentiary challenges to the admission of the videotapes of the tests are founded on a misapprehension of the business record exception. Business records, as defined by MRE 803(6), constitute an exception to the hearsay rule, MRE 803, and a purported business record may be admitted if it meets the foundational requirements of that rule. See *People v Safiedine*, 163 Mich App 25, 33; 414 NW2d 143 (1987). As with any other form of evidence, once a business record is admitted, in the absence of other bases for challenge or a limiting instruction, it is admitted for all purposes and may be used as such.[11]

---

[10] Contrary to the suggestion in the *Lopez* lead opinion, the tests were admitted without limitation.

[11] Cf. MRE 105; *People v Bahoda*, 448 Mich 261, 290-291; 531 NW2d 659 (1995).

The principle that generally admitted evidence may be used by the parties for any purpose is critical to understanding why *Sumner* and *Lopez* were wrongly decided. As will be discussed in greater detail, *Sumner* and

See *People v Spillman,* 399 Mich 313, 319; 249 NW2d
73 (1976) (quoting 1 Wigmore, Evidence [3d ed], § 13,
p 300).

The testimony of Peruski and Morley described
how the videotapes were created and maintained by
the defendant in a manner sufficient to satisfy the
foundational requirements.[12] Contrary to plaintiff's
argument, it was not necessary for defendant to pres-
ent a witness who actually conducted the tests or
made the videotapes in order to establish a proper
foundation. *People v Safiedine,* 152 Mich App 208,
216-217; 394 NW2d 22 (1986). We conclude on this
record that it was not an abuse of discretion to admit
the videotapes into evidence as business records. *Id.*;
*Hadley v Trio Tool Co,* 143 Mich App 319, 328; 372
NW2d 537 (1985).

### B. DEMONSTRATIVE EVIDENCE: THE RULE OF *Smith v Grange Mut Fire Ins Co*

Plaintiff's remaining attacks on the admissibility of
the videotapes are essentially assaults on the rule
established by our Supreme Court in *Smith v Grange
Mut Fire Ins Co, supra,* that demonstrative evidence
is admissible if it bears "substantial similarity" to an

---

*Lopez* conclude that the error in admitting the experimental evidence in
those cases occurred *because* the proponent of the evidence attempted to
*apply* the general principles illustrated by the tests to the specific acci-
dent at issue. See *Sumner, supra* at 697, and *Lopez, supra* at 812-813. The
reasoning of *Sumner* and *Lopez* is tautological. Unless the general princi-
ples illustrated in the demonstrative evidence can be applied to a matter
at issue, there could be no legitimate basis for admitting the tests in the
first instance because the tests would be irrelevant.

[12] We note that there was no indication in the record that the video-
taped tests were untrustworthy. The tests appear to have been conducted
as a regular part of defendant's business and they were created before the
plaintiff's accident and had no association with it.

issue of fact involved in a trial.[13] *Id.* at 126. As in this case, *Smith* involved a challenge to the introduction of experimental evidence that, while similar to the circumstances involved in the trial, did not faithfully replicate those conditions.

The plaintiff in *Smith* sued to recover on a fire insurance policy. The defense theory was that the plaintiff intentionally set the fire, and the defendant produced a witness who testified that the plaintiff

---

[13] It appears that plaintiff, the panel in *Sumner*, and the lead opinion in *Lopez* confuse the differing standards applicable to the admission of evidence intended as a re-creation of an event and evidence that is intended to illustrate principles associated with the event.

In *Kaminski v Wayne Co Rd Comm'rs*, 370 Mich 389; 121 NW2d 830 (1963), our Supreme Court first addressed the admission standard associated with "re-creation" evidence. There, the Court first announced an accuracy rule, requiring, as a precondition to admission of *re-creation* evidence, that there be a showing that the evidence reasonably and faithfully reproduces the conditions that existed at the time in question. *Id.* at 395-397. Neither in *Kaminski* nor in any other decision that we are aware of has the Supreme Court overruled the different principles it laid down in *Smith* for the admission of demonstrative evidence.

The *Kaminski* "faithful reproduction" standard has, in recent years, been described as requiring "virtual identity" between the proffered evidence and the event that evidence purports to re-create. See *Green v General Motors Corp*, 104 Mich App 447, 449-450; 304 NW2d 600 (1981). As described in *Green*, the distinction between demonstrative evidence and re-creation evidence, and the standards of admission associated with each, is important. *Id.* at 450. When evidence is offered to show how an event occurred, the focus is upon the conditions surrounding that event. *Id.* Consequently, it is appropriate that those conditions be faithfully replicated. *Id.* By contrast, when the evidence is being offered not to re-create a specific event, but as an aid to illustrate an expert's testimony concerning issues associated with the event, then there need not be as exacting a replication of the circumstances of the event. *Id.*

We believe that the *Sumner* panel and the *Lopez* lead opinion failed to distinguish between these two forms of evidence and their respective purposes, and thus failed to apply the appropriate rule governing admission. To the extent that the decisions of those two panels can be read as evincing a concern for confusion on the part of the jury regarding the purpose for which the evidence was admitted, the proper remedy is a limiting instruction pursuant to MRE 105, not exclusion of otherwise admissible evidence.

was acting in a suspicious manner just before the fire at her home. *Id.* at 124.[14] A significant issue in the case was whether the insurance company's witness could have seen the plaintiff at a certain distance in the dark on the night of the fire as that witness had testified. In an effort to challenge this evidence, the plaintiff introduced the testimony of several persons to demonstrate the limited capacity for accurate identification of a person at night. *Id.* at 124-125. However, the "test" observations of these witnesses were made on different nights, under differing moon illuminations, and at locations different from the one at issue at trial. *Id.* at 125-126.[15] The Supreme Court recognized that the experimental observations of the various plaintiff witnesses were made under differing conditions, but found that there was "sufficient similarity in the conditions under which the experimental observations were made to support the discretionary ruling of the trial court." *Id.* at 126. The Court concluded that the evidence could aid the jury in making its determination regarding the challenged identification testimony. *Id.*[16]

---

[14] The defendant's witness testified that he observed the plaintiff in the dark at 2:00 A.M. from a distance of approximately thirty yards removing personal effects from her home. The witness further testified that he was later awakened at 5:00 A.M. by the disturbance caused by the fire at the plaintiff's home. *Id.*

[15] Some of the test observations were made after criminal arson proceedings were commenced against the plaintiff; two were made after the trial against the defendant had commenced. *Id.*

[16] Focusing as it does upon the importance that challenged demonstrative or experimental evidence enable a jury more intelligently to consider the issues presented, the *Smith* "substantial similarity" rule is best understood as establishing a threshold requirement of relevancy that is now embodied in our codified rules of evidence in MRE 401 and 402. Unless the demonstrative evidence bears *enough* similarity to some factual circumstance at issue in the trial, that evidence is not relevant because it

Citing several annotations in support of its holding, the *Smith* Court quoted the following:

> "It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented." [*Id.*, quoting 22 CJ, p 759.]

The Supreme Court has never altered the demonstrative evidence rule propounded in *Smith*.[17] Thus, until *Sumner*, consistent with the obligation of inferior courts to follow the law propounded by our Supreme Court, *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), decisions by this Court after *Smith* had faithfully drawn a distinction between evidence that was offered only as demonstrative evidence and evidence that was offered as a re-creation of the event at issue in the case.[18]

---

advances no germane factual proposition that can meaningfully assist the trier of fact.

[17] See, e.g., *People v Davis*, 343 Mich 348, 367-368; 72 NW2d 269 (1955).

[18] See, e.g., *Osner v Boughner*, 180 Mich App 248, 257-262; 446 NW2d 873 (1989); *People v England*, 176 Mich App 334, 340-341; 438 NW2d 908 (1989), aff'd on different grounds 436 Mich 305; 462 NW2d 310 (1990); *Jenkins v Frison Bldg Maintenance Co*, 166 Mich App 716; 421 NW2d 275 (1988); *Duke v American Olean Tile Co*, 155 Mich App 555; 400 NW2d 677 (1986); *Kirk v Ford Motor Co*, 147 Mich App 337, 343-344; 383 NW2d 193 (1985); *Gorelick v Dep't of State Hwys*, 127 Mich App 324, 336-337; 339 NW2d 635 (1983); *Przeradski v Rexnord, Inc*, 119 Mich App 500; 326 NW2d 541 (1982); *Green v General Motors Corp*, 104 Mich App 447; 304 NW2d 600 (1981); *Muniga v General Motors Corp*, 102 Mich App 755; 302 NW2d 565 (1980); *Vanderberg v General Motors Corp*, 96 Mich App 683, 687-688; 293 NW2d 676 (1980); *Thorp v Dayton Tire & Rubber Co*, 51 Mich App 514; 215 NW2d 600 (1974); *Royal Mink Ranch v Ralston Purina Co*, 18 Mich App 695, 705-706; 172 NW2d 43 (1969); *Grand Trunk W R Co v*

1. THE *Sumner* RULE

Our Court in *Sumner* announced a new rule limiting the admission of demonstrative evidence, one that we conclude is in fundamental conflict with *Smith*. In *Sumner*, as in this case, the defendant was sued for breach of implied warranties and negligence. The plaintiff's injuries were the result of a head-on collision with another automobile. *Sumner, supra* at 695-696. There, General Motors also moved and was allowed to introduce videotapes of crash tests of vehicles to illustrate general physical principles supporting its defense. *Id.* at 696. In so doing, the defense denied that the tests were intended as a re-creation of the accident in that case, but applied the principles illustrated in the test videotapes to the facts in controversy in that case. *Id.* The *Sumner* panel held that the defendant's application of the general principles to the particular facts of the accident at issue was improper.

> Defendant's claim that the tests here at issue were not conducted in order to simulate Sumner's accident, while frequently repeated in the record, is inconsistent with the testimony of the defense witnesses. The witnesses went beyond use of the tapes to illustrate general physical principles. *Gorelick v Dep't of State Hwys*, 127 Mich App 324; 339 NW2d 635 (1983). . . . By testifying the test results could be generalized to the facts of the accident, we believe defendant's experts implicitly suggested that the tests had been conducted under conditions similar to those of the accident. The tests were not used to prove generalities, but instead to prove a very important specific factual question: what role the defective welds played in the alleged

*Pre-Fab Transit Co, Inc*, 14 Mich App 26, 30; 165 NW2d 281 (1968); *Manning v Lake Superior & I R Co*, 4 Mich App 316; 144 NW2d 831 (1966); *People v Ray*, 2 Mich App 623, 630-631; 141 NW2d 320 (1966).

enhancement of plaintiffs' injuries. Because the evidence addressed a major issue in the case and was visually very compelling, we find the error was not harmless. MCR 2.613. Admission of the evidence of the videotaped tests was improper. [*Sumner, supra* at 696-697.]

The *Sumner* panel cited no authority for the new rule of limitation on the admissibility of demonstrative evidence it announced[19] and we are unaware of any Michigan case preceding *Sumner* that has recognized such a limitation. *Sumner* is clearly inconsistent with the standard established in *Smith.* Moreover, leaving aside the impropriety of our Court establishing a rule different from existing Supreme Court precedent, we can discern no logical basis for the *Sumner* rule.[20]

---

[19] The *Gorelick* decision cited in the quoted text does not stand for the proposition suggested by *Sumner.* Nothing in *Gorelick* purports to contradict *Smith* or even remotely supports the proposition that the general principles illustrated in demonstrative evidence cannot be applied to the particular facts of a case.

[20] The *Sumner* panel acknowledged that the test data were not admitted as re-creation evidence. Although it is apparent that the *Sumner* panel took umbrage at the fact that the proponent of the demonstrative evidence applied the general principles of the tests to a "major issue in the case," it is unclear why this was or should be a concern. That panel did not explain why the adversarial nature of the trial process, wherein the party opposing the demonstrative evidence is free to attack the evidence on any basis, including its dissimilarity to the issue at bar, was inadequate to ensure a fair trial. This is the precise point made in the concurring *Lopez* opinion: "Because 'the lack of exact identity affects only the weight and not the competency of the evidence,' [*Smith, supra* at 126], any difference between the conditions of the experiment and the actual accident could be the subject of cross-examination and jury argument, but not grounds for challenging admissibility, see *Green, supra* at 451-452." *Lopez, supra* at 815.

We believe that when a court intervenes to change the "rules of engagement" in the adversarial trial process, it must explain why it is doing so and predicate that change on some clearly articulated policy found in the Michigan Rules of Evidence, statutes, or decisional law.

Although the *Sumner* panel offered no defense of its rule, the *Lopez* lead opinion attempted to do so. See *Lopez, supra* at 813, n 10. Despite

Ironically, taken to its logical conclusion, the new *Sumner* rule would appear to render demonstrative evidence inadmissible because, if inferences drawn from that evidence cannot be applied to an issue in controversy, then it is hard to conceive how the demonstrative evidence can ever meet the materiality and relevance requirements of the Michigan Rules of Evidence.[21] In sum, we conclude that the *Sumner*

---

the fact that the lead opinion cited *Gorelick, supra,* which correctly identifies the differing evidentiary rules associated with the admission of re-creation and demonstrative evidence, it is quite evident that the lead opinion mistakenly conflated the two rules:

> I do not see the dilemma identified by [the concurring] opinion. If a test is conducted under *sufficiently similar* circumstances, it may be used as evidence purporting to *recreate* what likely happened in the accident at issue. If it is *not sufficiently similar,* and only purports to illustrate general principles, its use must be circumscribed, and the court must be vigilant that the illustrative evidence is not misused. [*Id.* (emphasis added).]

As discussed earlier in the text, "sufficiently similar" is the standard that must be applied in determining whether *demonstrative,* not re-creation, evidence is to be admitted; if the proposed demonstrative evidence is *not* sufficiently similar, it cannot be admitted at all on this basis. No case, including *Sumner,* has advanced such a rationale in this arena as the lead opinion in *Lopez* has suggested. It is perhaps not surprising that the lead opinion in *Lopez* does not even cite or address *Smith.*

Further, the suggestion of the *Lopez* lead opinion that special judicial "vigilance" should be exercised when demonstrative evidence is involved does not explain the flaw in the basic notion that the adversarial process is presumptively capable of ensuring that the jury is made fully aware of any deficiencies in an adversary's proofs. *Smith* and *Green* clearly express a contrary view on this subject. See *Smith, supra* at 126; *Green, supra* at 451-452.

Finally, if there was a failure of vigilance in *Lopez,* it was not on the part of the trial court. We note that plaintiff's counsel in *Lopez* failed to request a limiting instruction advising the jury that the videotapes were being admitted only for illustrative purposes, even though counsel for defense offered to acquiesce in such an instruction, and also frequently failed to object at points during trial that plaintiff now claims the defense violated the "*Sumner* rule."

[21] "Irrelevant evidence, of course is inadmissible. MRE 402. When evidence does not make a fact '*of consequence* to the determination of the

panel, while not disavowing the theoretical concept of demonstrative evidence, has as a practical matter eliminated the use of demonstrative evidence. It has done so without a supporting rationale and contrary to controlling Supreme Court authority.

### 2. *LOPEZ v GMC*

Returning to *Lopez*, we must determine under the appropriate pre-*Sumner* standard whether the trial court properly admitted the demonstrative evidence. We review challenges to the admission of evidence under an "abuse of discretion" standard. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). Reversal of close discretionary evidentiary questions is not warranted merely because reviewing appellate judges would have ruled differently. *Id.*

Contrary to the lead opinion in *Lopez*, we cannot conclude that the trial court abused its discretion in admitting the two videotapes showing tests conducted by defendant. Plaintiff was able to and did point out to the jury the differences between the test conditions and the conditions of her accident. Defendant acknowledged the differences and did not claim that the tests re-created plaintiff's accident. Further, plaintiff's own expert agreed that the tests would be useful in illustrating the physical principles

---

action more or less probable,' it is not relevant. MRE 401." *Dacon v Transue*, 441 Mich 315, 339; 490 NW2d 369 (1992) (emphasis added). MRE 401, which defines relevant evidence, embodies two fundamental concepts: materiality and relevancy. Relevancy addresses the question whether there is, in a logical sense, probative force in a particular piece of evidence, while materiality is concerned with the question whether the fact to be proved is genuinely at issue. Materiality and relevancy must be established as a precondition of admission of evidence. See Michigan Courtroom Evidence (rev ed), (Wade & Strom, eds, Ann Arbor: Institute of Continuing Legal Education), p 71.

involved in the accident, a point the *Smith* Court found highly germane in considering whether demonstrative evidence should be admitted.

Our review of the record does not support plaintiff's contention that defendant tried to mislead the jury into thinking that the videotapes depicted a recreation of plaintiff's accident. We note that the trial court was sensitive to this possibility during the arguments on plaintiff's motion in limine. Perhaps most fatal to plaintiff's claim of error here is the fact that plaintiff failed or chose not to request a limiting instruction at the time the challenged evidence was admitted or at any point thereafter. If plaintiff genuinely believed that jury confusion might be created concerning the purpose for which this evidence might properly be used during trial, then a cautionary instruction should have been requested. MRE 105. We hold that any error that may have arisen as a result of the unlimited admission and use of the disputed evidence could have been cured by such an instruction. *Bahoda, supra* at 291, n 61. Accordingly, plaintiff has waived any claim of error concerning the admission and use of this demonstrative evidence.

### C. ADMISSION OF PERUSKI'S TESTIMONY CONCERNING KINEMATICS AND BIOMECHANICS

Plaintiff's last evidentiary challenge is that the trial court abused its discretion in permitting defense expert Peruski to testify about occupant kinematics and biomechanics. This claim is without merit.

Whether a witness is qualified to render an expert opinion is a matter that rests within the discretion of the trial court. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 402; 443 NW2d 340 (1989). There is no tenable

argument that Peruski was not sufficiently qualified. He had experience as an engineer for almost thirty years, his job involved product quality and review of accidents, and he had spent a dozen years evaluating restraint systems.

The focus of plaintiff's objection to Peruski's testimony about occupant kinematics at trial is that, during the course of discovery, including Peruski's deposition, defendant had indicated Peruski would not testify as an expert regarding occupant kinematics. Defendant advised that Peruski was intended to provide expert testimony regarding the proper working of the restraint system; Morley was expected to testify for defendant about occupant kinematics and accident reconstruction. Indeed, when plaintiff's counsel asked Peruski at his deposition his opinion regarding what happened to plaintiff, defense counsel objected on the ground that Peruski had not been offered in the capacity of an expert on biomechanics or occupant kinematics.

However, over objection, Peruski gave his opinion in the deposition that the restraint system worked properly but that, in the type of accident involved, it was to be expected that there would be head or facial involvement with the steering wheel.

The admissibility of an expert's testimony is a matter for the trial court's discretion. *Davis v Link, Inc*, 195 Mich App 70, 74; 489 NW2d 103 (1992). The trial court did not abuse its discretion in permitting Peruski to testify about occupant kinematics. Peruski was qualified to do so. The evidence he gave at trial was relevant. The trial court was aware that expert witness Morley was not available because she was on maternity leave. Moreover, plaintiff suffered no sur-

prise as a result of the admission of Peruski's testimony because plaintiff had discovered his opinions on these subjects by interrogating Peruski in deposition. Peruski's opinions were essentially the same as those of Morley, whose videotaped deposition testimony about occupant kinematics was presented to the jury.

Importantly, Peruski's testimony about occupant kinematics was admitted in rebuttal to Kowalski's testimony.[22] The admission of rebuttal evidence rests largely in the discretion of the trial court. *Gaffka v Grand Trunk W R Co*, 306 Mich 246, 250-251; 10 NW2d 844 (1943).

Plaintiff argues that permitting Peruski to testify as an expert regarding kinematics was erroneous because Peruski was not identified as an expert in kinematics under the discovery rule pertaining to experts, MCR 2.302(B)(4), and because defendant never supplemented its interrogatory answers to indicate Peruski's additional field of expertise as required by MCR 2.302(E)(1)(a)(ii). We find no violation of the discovery rules under the circumstances of this case; the need for Peruski to testify as an expert in occupant kinematics was not clear until trial. *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 457;

---

[22] Plaintiff's expert, Kowalski, had never been identified as an expert witness in plaintiff's discovery answers. However, Kowalski was deposed and testified that he did not hold himself out as an expert in occupant kinematics, accident reconstruction, or biomechanics. Defendant moved in limine to exclude the offering of opinions by plaintiff's expert in areas in which he had disclaimed expertise and which had not been disclosed in discovery. The trial court initially granted defendant's motion, prohibiting new opinions from being offered. However, during Kowalski's testimony, over defendant's objections, the trial court reversed its earlier ruling and allowed plaintiff's expert to give his opinions regarding these subjects. Defendant offered its expert, Peruski, to rebut this testimony.

540 NW2d 696 (1995). There was no unfair prejudice to plaintiff because the substance of Peruski's testimony was not a surprise. Plaintiff knew Peruski's opinions and these were the same opinions held by Morley, who plaintiff expected would testify.

### III
#### "ENHANCED INJURY" JURY INSTRUCTION

Plaintiff's final appellate claim is that the "enhanced injury" instructions given by the trial court were erroneous. The trial court did not have available standard jury instructions that incorporated an enhanced injury theory. The trial court gave the form of enhanced injury instruction approved by the *Sumner* panel.

Plaintiff urges, in effect, that we overrule this holding of *Sumner*. However, we decline to address this issue. This jury instruction never became material because the jury found no negligence or breach of warranty on the part of defendant and never reached the question of damages.

The judgment in favor of defendant is affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.