*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF BRYAN LEWIS, by JOHN LEWIS,
Personal Representative,

        Plaintiff-Appellant,

v

BARBARA ANN MESSICK,

        Defendant-Appellee.

UNPUBLISHED
August 13, 2020

No. 346776
Oakland Circuit Court
LC No. 2017-161185-NI

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

In this action brought pursuant to the wrongful death act, MCL 600.2922, and the Michigan no-fault act, MCL 500.3135, plaintiff, as personal representative of the estate of Bryan Lewis (the "decedent'), appeals as of right the judgment in favor of defendant Barbara Ann Messick, the driver of the vehicle that tragically struck the decedent. Specifically, the jury concluded that both parties were comparatively negligent, but found that the decedent was 51 percent at fault and defendant 49 percent at fault.[1] Finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS AND PROCEDURAL HISTORY

The 18-year-old decedent was struck and killed by defendant's vehicle while walking home from his job at a Wendy's restaurant in Waterford Township on October 23, 2016. The decedent left work at 10:00 p.m. and walked westbound along Tubbs Road. He was struck by defendant's vehicle while attempting to cross Airport Road in an area without a crosswalk or a streetlight. Defendant was driving northbound on Airport Road in her 2002 Pontiac Montana. The posted speed limit on Airport Road was

---

[1] Because the decedent was found to be more than 50% at fault, the trial court entered a judgment in favor of defendant. MCL 500.3135(2)(b) of the no-fault act provides: "Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault."

40 miles per hour, but the data recorder in defendant's vehicle indicated that she was driving 46 or 47 miles per hour when she hit the decedent. Defendant did not see the decedent, who was wearing dark clothing. Her vehicle struck the decedent on his left side. Defendant did not become aware of the decedent's presence until she felt her vehicle strike him. Another motorist, Barry Jenneman, stopped to help. He stood by the decedent and waved his arms to warn other motorists. Although Jenneman was able to alert traffic to the scene, he decided to move the decedent to the side of the road for safety reasons until emergency personnel arrived. The decedent sustained substantial brain injuries and was removed from life support two days after the accident.

At trial, plaintiff's accident-reconstruction expert testified that defendant was fully responsible for the accident because the decedent would have safely crossed the road if defendant had been driving at the posted speed limit. Defendant's theory was that the decedent was negligent for crossing a dark street, in dark clothing, with a vehicle approaching. Defendant introduced video evidence of visibility studies conducted by the Waterford Township Police Department and defendant's expert, Jennifer Yaek, Ph.D. In these studies, a subject stood at the side of the intersection at night while a driver drove to the intersection. A camera mounted on the cars recorded the experiments. Plaintiff objected to the admission of the videos on the ground that the conditions of the experiments were too dissimilar to the actual event. The trial court disagreed and admitted the videos.

Defense counsel remarked in his opening statement that the decedent's cell phone was found on the street. He admitted that he did not have direct evidence that the decedent was using his cell phone when he crossed the street, but he indicated that the evidence would support an inference that the phone was in his hand at the time. Defense counsel elicited Waterford Township Police Officer Stanley Mathewson's testimony that cell phones can be distracting and dangerous. In response to a jury-submitted question, Dr. Yaek opined that it was unlikely that the force of impact could have caused the cell phone to come out of the decedent's pocket. In response to further questioning by plaintiff, Dr. Yaek stated that the decedent's pants appeared to have deep pockets, making it less likely that the phone was forced out of his pocket. Plaintiff did not object to any of the remarks or questions regarding cell phones. He similarly asked witnesses questions regarding defendant's cell phone use.

The jury found that the decedent and defendant were both negligent. It apportioned the decedent's and defendant's comparative negligence at 51 percent and 49 percent, respectively. Accordingly, plaintiff received no damages. Plaintiff moved for a new trial raising the same issues that he raises on appeal. The trial court denied the motion.

## II. ADMISSION OF EVIDENCE - VISIBILITY-STUDY VIDEOS

Plaintiff first alleges that the trial court erred by admitting the videos of the visibility studies conducted by the Waterford Township Police Department and Dr. Yaek because they did not accurately depict defendant's view at the time of the accident and should have been excluded under MRE 401-403. We disagree.

We review the trial court's decision to admit evidence for an abuse of discretion. *Omian v Chrysler Group, LLC*, 309 Mich App 297, 306-307; 869 NW2d 625 (2015). Preliminary questions of law are reviewed de novo. *Id*.

"MRE 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 542; 854 NW2d 152 (2014). Generally, relevant evidence is admissible, and irrelevant evidence is not admissible. MRE 402. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The parties contend that there is a distinction between recreative and demonstrative evidence as discussed in *Kaminski v Bd of Wayne Co Rd Comm'rs*, 370 Mich 389; 121 NW2d 830 (1963); *Dennis v Jakeway*, 53 Mich App 68; 218 NW2d 389 (1974); *Green v Gen Motors Corp*, 104 Mich App 447; 304 NW2d 600 (1981); and *Lopez v Gen Motors Corp*, 224 Mich App 618; 569 NW2d 861 (1997). Plaintiff submits that *Kaminski* and *Dennis* are applicable because they involved photographic and film exhibits purporting to recreate the original event, that recreations require a higher degree of similarity to the original event, and the trial court failed to recognize this distinction when admitting the visibility-study videos.

Contrary to plaintiff's argument, these decisions do not recognize a bright-line distinction between recreative or reenactment exhibits and demonstrative exhibits. Rather, these decisions recognize that the trial court should exercise its discretion. Further, we conclude that the trial court did not abuse its discretion by admitting the evidence in light of *Lopez*. In *Lopez*, the plaintiff brought a product liability action against the defendant automobile manufacturer. She alleged that the seat belt restraint system failed to protect her from facial and upper-body injuries when her vehicle collided with the side of a stationary freight train. *Id*. at 621. The defense theory was that the system was not defective, and that "the type of injuries plaintiff received were of a kind to be expected in accidents such as plaintiff's." *Id*. at 623. The defendant introduced into evidence videotapes of "sled tests" and frontal-barrier crash tests using crash dummies. The defense experts testified about occupant kinematics and biomechanics, using the videotaped tests for reference. *Id*. at 622-623. The trial court allowed the videotapes as demonstrative evidence, ruling that "the dissimilarities between the tests and the accident went not to the admissibility of the evidence, but to its weight . . . ." *Id*. at 625. This Court ultimately concluded:

> [W]e cannot conclude that the trial court abused its discretion in admitting the two videotapes showing tests conducted by defendant. Plaintiff was able to and did point out to the jury the differences between the test conditions and the conditions of her accident. Defendant acknowledged the differences and did not claim that the tests recreated plaintiff's accident. Further, plaintiff's own expert agreed that the tests would be useful in illustrating the physical principles involved in the accident . . . .

> Our review of the record does not support plaintiff's contention that defendant tried to mislead the jury into thinking that the videotapes depicted a re-creation of plaintiff's accident. We note that the trial court was sensitive to this possibility during the arguments on plaintiff's motion in limine. Perhaps most fatal to plaintiff's claim of error here is the fact that plaintiff failed or chose not to request a limiting instruction at the time the challenged evidence was admitted or at any point thereafter. If plaintiff genuinely believed

that jury confusion might be created concerning the purpose for which this evidence might properly be used during trial, then a cautionary instruction should have been requested. MRE 105. We hold that any error that may have arisen as a result of the unlimited admission and use of the disputed evidence could have been cured by such an instruction. . . . Accordingly, plaintiff has waived any claim of error concerning the admission and use of this demonstrative evidence. [*Id*. at 634-635.]

When introducing the police study video, defendant's counsel noted that defendant's original vehicle was unavailable, but that testimony established that the video was filmed at the same intersection with a similar vehicle with similar headlights and an officer dressed in a similar manner as the decedent. Similarly, when introducing Dr. Yaek's visibility-study video, counsel noted that the testimony established that the video was filmed with an almost identical vehicle, under similar conditions, the same location, and with a person dressed almost identical to what the decedent was wearing. The trial court did not abuse its discretion by determining that these similarities supported the relevancy of the evidence. *Id*. Although plaintiff correctly points out that the videos did not exactly replicate the original event, any danger that the jury would perceive the videos as such was averted by giving plaintiff ample opportunity to cross-examine Dr. Yaek and Officer Mathewson regarding differences between the conditions in the decedent's accident and the conditions in the visibility studies. The jury was made aware that the subject in these studies was standing still and that the exemplar vehicles and their headlights were not identical to defendant's car. Plaintiff's counsel elicited the witnesses' testimony that the cameras mounted on the vehicles did not make recordings identical to what a driver would have seen. He argued that the studies did not show peripheral vision, color detail, or movement. He emphasized that Jenneman was able to make himself seen despite also wearing dark clothing. Because the videos were not improperly represented as entirely authentic reenactments, the potential for unfair prejudice did not outweigh their probative value. Accordingly, the trial court did not abuse its discretion by admitting the videos.[2]

## III. JURY INSTRUCTION

Plaintiff raises two claims of instructional error. "We review claims of instructional error de novo. In doing so, we examine the jury instructions as a whole to determine whether there is error requiring reversal." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "The instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Id*. "Even if somewhat imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury." *Id*. An instructional error is harmless if "failure to reverse is not inconsistent with substantial justice." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 479-480; 663 NW2d 447 (2003).

### A. SUDDEN-EMERGENCY

Plaintiff contends that the trial court erred by granting defendant's request for an instruction on the sudden-emergency doctrine. The sudden-emergency doctrine essentially excuses a defendant's negligent conduct when an unexpected emergency arises that requires an immediate response and makes it impossible to contemplate other reasonable action to avoid the danger. *Socony Vacuum Oil Co v Marvin*,

---

[2] Plaintiff's citations to remarks made by defense counsel in opening and closing argument do not alter the disposition of this issue. The jury was instructed that counsel's argument was not evidence.

313 Mich 528, 546; 21 NW2d 841 (1946). Although we are not persuaded that the instruction was inapplicable, given the jury's finding that defendant was 49 percent at fault for causing the accident, it is apparent that the jury did not rely on the sudden-emergency doctrine to excuse defendant's conduct. Therefore, even if the instruction was erroneous, failure to reverse on this basis would not be "inconsistent with substantial justice." *Klapp*, 468 Mich at 479-480.

## B. MCL 257.655

The trial court also gave an instruction based on MCL 257.655, which provides that "[w]here sidewalks are provided, a pedestrian shall not walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest." MCL 257.655(1). A violation of this provision is a civil infraction. MCL 257.655(2). Plaintiff argues that this instruction should not have been given because the decedent was legally walking on the left side of Tubbs Road, which had no sidewalk, in order to reach the west side of Airport Road, which had a sidewalk. Defendant argues that the instruction was appropriate because the decedent could have used another route, with sidewalks, to reach Airport Road.

We agree with plaintiff that there was no evidence that the decedent violated the statute. The statute requires a pedestrian to use sidewalks "[w]here sidewalks are provided." It does not prohibit a pedestrian from choosing a route without sidewalks when an alternate route with sidewalks is also available. Moreover, walking on the traveled portion of Tubbs Road was not a contributing cause to the accident, even if the decedent had walked on the right side in violation of the statute. Defendant did not hit the decedent as he was walking along Tubbs Road; she hit him while he was crossing Airport Road. The trial court therefore erred by giving the instruction. We conclude, however, that the error was harmless. There is no basis for believing that the presence or absence of a sidewalk was a contributing factor to the accident or the jury's verdict. Regardless of whether the decedent could have used an available sidewalk to get to Airport Road, the decedent was struck while *crossing* Airport Road. Defendant's theory was that the decedent was negligent by crossing the dark street in the path of an oncoming car. This theory did not depend on the route the decedent took to get to Airport Road. Accordingly, failure to reverse on this basis would not be "inconsistent with substantial justice." *Klapp*, 468 Mich at 479-480.

## IV. WORK-LOSS DAMAGES

Next, plaintiff submits that the trial court erroneously granted defendant's motion in limine to exclude evidence of the decedent's future wage loss. We note that this issue is moot in light of the jury's determination that the decedent was more than 50% at fault, which precluded any recovery of damages, MCL 500.3135(2)(b). Regardless, the trial court did not err by granting defendant's motion.[3]

## V. CELL PHONE REFERENCES

---

[3] We reject plaintiff's reliance on the wrongful-death action to recover future work-loss damages because it was subject to any limitations on damages in the no-fault act, which does not permit recovery for work loss after the date on which an injured person dies, MCL 500.3107(1)(b).

Plaintiff alleges that he is entitled to a new trial on the basis of attorney misconduct because defense counsel insinuated that the accident occurred because the decedent was using his cell phone and not paying attention to traffic, and these insinuations were not supported by the evidence, diverted the jury's attention, and denied him a fair trial. We disagree.

A trial court's decision on a motion for a new trial on the basis of attorney misconduct is reviewed for an abuse of discretion. *Veltman v Detroit Edison Co*, 261 Mich App 685, 688; 683 NW2d 707 (2004). In this case, however, plaintiff did not object to the challenged conduct during trial. Because plaintiff's claims of misconduct were not preserved with an appropriate objection at trial, plaintiff "must prove that (1) the remarks were so prejudicial as to have denied the party a fair trial and that (2) any resulting prejudice could not have been cured by a curative instruction." *Badiee v Brighton Area Schs*, 265 Mich App 343, 373-374; 695 NW2d 521 (2005).

A new trial may be granted under MCR 2.611(A)(1)(b) where a party's "substantial rights are materially affected" by reason of "[m]isconduct of the jury or of the prevailing party." Attorney comments do not normally constitute grounds for reversal unless they represent a deliberate attempt to prevent the opposing party from receiving a fair and impartial trial. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 636 (2013). Reversal is required only where the prejudicial statements reflect a deliberate attempt to inflame or otherwise prejudice the jury. *Id*. Defense counsel's opening remark about the decedent's cell phone was neither made in bad faith nor unfairly prejudicial. Defense counsel stated that the evidence would show that the decedent's cell phone was in his hand, but he acknowledged that he had no direct evidence that the decedent was using it. Evidence that the phone was found on the pavement supported an inference that the phone was not stowed in his pocket, which supported an inference that the decedent may have been using it when he was struck by defendant's vehicle.

Attorney misconduct "cannot be predicated on good-faith efforts to admit evidence." See *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Consequently, defense counsel's examination of the witnesses does not support a claim of attorney misconduct. Similarly, Dr. Yaek's testimony also would not support attorney misconduct if defense counsel had asked the challenged question. In any event, her testimony regarding the cell phone was not in response to defense counsel's question, but a question submitted by a juror. Moreover, plaintiff approved the question. In general, failing to timely assert a right merely forfeits the issue, whereas intentionally and voluntarily relinquishing a known right effectuates a waiver. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 68-69; 642 NW2d 663 (2002); *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999). If an issue is waived, any error is extinguished; as a consequence, no error exists for this Court to review. See *Landin*, 305 Mich App at 545. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Plaintiff's approval of the question to Dr. Yaek thus waived this claim of error.

Viewing these claims in their entirety, we find that plaintiff fails to establish that he was denied a fair trial. The evidence supported an inference that the decedent might have been distracted by his cell phone when he was struck by defendant's car. Plaintiff tried to establish an inference that defendant also might have been distracted by her phone, but there was no evidence supporting this inference. Defense counsel never tried to argue that there was uncontroverted evidence of the decedent's cell phone use. Indeed, counsel openly acknowledged that there was no direct evidence. Plaintiff responded to defendant's argument by suggesting that defendant was appealing to bias against young persons. Instead of objecting to the cell phone references on relevance grounds, plaintiff tried to form his own strategy

based on defendant's suspected cell phone use. The failure of this strategy does not render defense counsel's strategy unfair or unduly prejudicial.

## VI. GREAT WEIGHT OF EVIDENCE

Plaintiff asserts that he should be granted a new trial on the ground that the jury's verdict is contrary to the great weight of the evidence. We disagree.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). The trial court's decision on a motion for a new trial is reviewed for abuse of discretion. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 196, 600 NW2d 129 (1999). "Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the factfinder." *Dawe v Dr Reuvan Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). "Similarly, the weight to be given to expert testimony is for the jury to decide." *Id*. "[A] jury's verdict should not be set aside if there is competent evidence to support it." *Id*.

Plaintiff argues that the jury returned an erroneous verdict because it was influenced by improper argument regarding cell phone use, the improper instruction on the sudden-emergency doctrine, and the "deceptive" visibility-study videos. We have concluded that these arguments are without merit. Plaintiff argues that the evidence firmly proved that defendant should have observed the decedent, but failed to do so, and that she struck him while speeding. Plaintiff's evidence was not conclusive, uncontroverted, or overwhelming. Other evidence established that the decedent was walking across a dark street wearing dark clothing in an area where a driver would not expect a pedestrian. The decedent attempted to traverse the road instead of waiting for defendant's car to pass. The jury's finding that defendant was 49 percent at fault indicated that the jury was persuaded that defendant was partly culpable for causing the accident, but not as much as the decedent. The jury's verdict is not contrary to the great weight of the evidence.

Affirmed. Defendant, having prevailed, may tax costs.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel